**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FLASH-CONTROL, LLC,

                    Plaintiff,

     v.

INTEL CORPORATION,

                    Defendant.

Civil Action No. 1:19-cv-01107-ADA

JURY TRIAL DEMANDED

**DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT AND OPENING CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.   INTRODUCTION ...........................................................................................................1

II.  THE '880 AND THE '537 PATENTS ARE INVALID FOR LACK OF WRITTEN
     DESCRIPTION.............................................................................................................3

     A.   Flash-Control's Expert Opinion Should Be Rejected As A Matter Of Law............3

          1.   Flash-Control's Expert Improperly Relied On The Later-Filed Asserted
               Claims To Provide Their Own Written Description Support .....................3

          2.   Flash-Control And Its Expert Have Failed To Identify Written Description
               Support For The Claims As An Integrated Whole......................................7

     B.   Without Dr. Bagherzadeh's Opinion, Flash-Control Has Not Rebutted Intel's
          Showing On Written Description.............................................................................9

     C.   Even With Dr. Bagherzadeh's Opinion, There Is No Written Description Support
          For The Asserted Claims ......................................................................................10

III. CLAIM 1 OF THE '880 PATENT IS INVALID AS INDEFINITE...............................16

IV.  CONCLUSION............................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anascape, Ltd. v. Nintendo of America, Inc.*,
   601 F.3d 1333 (Fed. Cir. 2010) ............................................................................... 3

*Ariad Pharm. Inc. v. Eli Lilly & Co.*,
   598 F.3d 1336 (Fed. Cir. 2010) ............................................................................ 7, 8

*Barrett v. Atl. Richfield Co.*,
   95 F.3d 375 (5th Cir. 1996) ..................................................................................... 9

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.*,
   No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266 (E.D. Tex. Dec. 19, 2016) ....... 18

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
   636 F.3d 1341 (Fed. Cir. 2011) ............................................................................... 3

*Emerson v. Johnson & Johnson*,
   No. CV H-17-2708, 2019 WL 764660 (S.D. Tex. Jan. 22, 2019) ............................ 9

*H-W Tech., L.C. v. Overstock.com, Inc.*,
   758 F.3d 1329 (Fed. Cir. 2014) ............................................................................. 18

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
   45 F. Supp. 3d 969 (D. Minn. 2014) ...................................................................... 18

*Inline Connection Corp. v. AOL Time Warner Inc.*,
   No. CIVA 02-272MPT, 2007 WL 275928 (D. Del. Jan. 29, 2007) .......................... 9

*Lockwood v. Am. Airlines, Inc.*,
   107 F.3d 1565 (Fed. Cir. 1997) ............................................................................... 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) .......................................................................................... 16, 17

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
   723 F.3d 1336 (Fed. Cir. 2013) ........................................................................... 7, 15

*Purdue Pharma L.P. v. Recro Tech.*,
   LLC, 694 F. App'x 794 (Fed. Cir. 2017) .................................................................. 7

*Quake v. Lo*,
   928 F.3d (Fed. Cir. 2019) ......................................................................................... 3

*TracBeam L.L.C. v. AT&T Inc.*,
  No. 6:11-CV-96, 2013 WL 6175372 (E.D. Tex. Nov. 25, 2013) ...............................................1

*TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
  264 F.3d 1111 (Fed. Cir. 2001)...................................................................................................3

*Yeti Coolers, LLC v. RTIC Coolers, LLC*,
  No. A-15-CV-597-RP, 2017 WL 429210 (W.D. Tex. Jan. 28, 2017).......................................9

## I.       INTRODUCTION

Intel's motion established two fundamental Section 112 defects in Flash-Control's asserted patents. Rather than rebut Intel's showing, Flash-Control's response—and the declaration of its expert—confirm that, on both issues, the court should find the claims invalid as a matter of law.

There is no material factual dispute that every asserted claim is invalid for lack of written description. "'To guard against the inventor's overreaching,' the written description requirement insists that the inventor recount his invention in such detail that his future claims can be determined to be encompassed within his original creation." *TracBeam L.L.C. v. AT&T Inc.*, No. 6:11-CV-96, 2013 WL 6175372, at *2 (E.D. Tex. Nov. 25, 2013) (quoting *Vas-Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1561 (Fed. Cir. 1991)). But that overreaching is precisely what we have here: years after the original disclosure was cemented, Flash-Control searches in vain to find support for claims[1] that have little, if any, connection to the patentee's original disclosure, let alone a connection sufficient to satisfy this statutory requirement of Section 112.

Flash-Control's response does not rebut Intel's showing that the asserted claims lack written description support for three reasons. ***First***, Flash-Control's expert's opinion must be rejected as a matter of law because he improperly used the asserted claims to provide their own written description support. ***Second***, Flash-Control's expert's opinion must also be rejected as a matter of law because he improperly sought to derive written description support from an amalgam of disclosures plucked selectively from the patent rather than identifying support for the claimed invention as an integrated whole. And ***third***, even if Flash-Control's expert's opinion were to be credited (it should not), Flash-Control's position fails on the merits because it does not meaningfully rebut Intel's showing that the asserted claims lack written description support.

---

[1]       Flash-Control does not dispute that all of the asserted claims rise and fall together.

Flash-Control's response also confirmed that claim 1 of the '880 patent is indefinite as a matter of law. While the claim contemplates the modification of a portion of a page on volatile memory after that portion has been transferred from the non-volatile memory, the claim fails to delineate **how** this modified portion of a page is moved back from the volatile memory to non-volatile memory or to provide an antecedent basis for "said one or more updated portions." As Intel explained in its opening brief, this failure is a direct result of the claim **missing twenty-nine words** that were proposed by the applicant, approved by the examiner, but ultimately omitted from the issued claim. Instead of confronting this issue, Flash-Control ignores it. Flash-Control never mentions the missing language in its response and never presented the missing language to its expert to consider. Bagherzadeh Dep. at 327:20–25[2] ("I did not provide an opinion regarding the omitted words in my report"); *see also id.* at 327:2–17. Flash-Control's shifting positions on this limitation are telling. Flash-Control initially argued in its opening claim construction brief that the language at issue was not a limitation at all (Dkt. 49 at 10), but now argues that the claim language is an actual limitation and well understood on its face by a person of ordinary skill the in art. (Dkt. 60 at 13). Without the missing words, claim 1 of the '880 patent is indefinite.[3]

---

[2]      Citations herein to "Bagherzadeh Dep." refer to the deposition of Dr. Nader Bagherzadeh conducted May 18, 2020, attached as 1. Emphasis added and objections omitted throughout, unless otherwise noted.

[3]      Without Flash Control's expert's testimony on indefiniteness, Flash-Control has failed to offer any competent evidence to dispute indefiniteness. However, Flash-Control never disclosed expert testimony pursuant to the extrinsic evidence disclosure provisions of this Court's Order Governing Proceedings (Dkt. 29-1 at 7), either by the January 22, 2020 deadline or by supplementing its disclosure at any point since. Instead, expert testimony was simply offered alongside Flash-Control's response, without a motion seeking leave to rely on the undisclosed evidence or any explanation attempting to justify its initial failure to disclose. Flash-Control's offer of indefiniteness expert testimony also directly contradicts its representation to this Court and to Intel that it had no intention to "use the expert for the indefiniteness issue." Ex. 2 Hr'g Tr. at 15:10-15, Feb. 14, 2020. Intel therefore objects to the undisclosed evidence on indefiniteness, which should be excluded pursuant to this Court's Order, that explicitly warns that the "failure to

## II.  THE '880 AND THE '537 PATENTS ARE INVALID FOR LACK OF WRITTEN DESCRIPTION

The asserted claims of the '880 and the '537 patents fail to "convey[] with reasonable clarity to those skilled in the art that, as of the filing date sought, [the applicant] was in possession of the invention" because the patentee inappropriately added new matter during the claim amendment process. *Quake v. Lo*, 928 F.3d at 1365, 1373 (Fed. Cir. 2019).

### A.  Flash-Control's Expert Opinion Should Be Rejected As A Matter Of Law

#### 1.  Flash-Control's Expert Improperly Relied On The Later-Filed Asserted Claims To Provide Their Own Written Description Support

Dr. Bagherzadeh's opinions on written description must be rejected as a matter of law because he admitted that he applied the wrong legal standard by relying on the content of the asserted claims in his written description analysis. The asserted patents are all continuations that claim priority to an earlier specification. Therefore, their claims were not present in the original written description and thus as a matter of law cannot be relied upon for written description support. *Anascape, Ltd. v. Nintendo of America, Inc.*, 601 F.3d 1333, 1337 (Fed. Cir. 2010) (holding that because an amended claim was "not present in the original . . . specification" it "cannot contribute written description support for the . . . claims."); *see also TurboCare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co*., 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("When the applicant adds a claim or otherwise amends his specification after the original filing date, as [the applicant] did in this case, the new claims or other added material must find support *in the original* specification."); *Centocor Ortho Biotech, Inc. v. Abbott Labs*., 636 F.3d 1341, 1350 (Fed. Cir. 2011) (rejecting argument that claims in a continuation application provided support for later claim amendments).

---

summarize the potential expert testimony, *in a good faith, informative fashion* may result in the **exclusion** of the proffered testimony." Dkt. 29-1 at 7 (emphasis added).

Despite the clear prohibition against using claims drafted years later to suggest that the inventor was in possession of the claimed invention at the time of the invention, Dr. Bagherzadeh testified repeatedly that his written description analysis did just that. When asked whether certain specification text, along with what he identified as the relevant figures, provided sufficient written description when considered *without the text of the claims themselves*, he could not do so:

> Q Okay. So is it fair to say, then, in order for a person of ordinary skill in the art to understand Figure 3 to teach a second buffer that writes a portion of the page to volatile memory, that person of ordinary skill in the art would also have to have in mind the embodiment in Figure 9?
>
> A It has to have the whole patent in – in front of them.
>
> Q *If they had Figure 3 and Figure 9 and Column 1 and Column 2 and 3 and 4, but not the claims, would they be able to arrive at the solution?*
>
> A *I cannot give you a fair answer on that. That requires some analysis.*
>
> Q So that's not an opinion you've formed up to today?
>
> A My opinion was based on all the elements I cited.

Bagherzadeh Dep. at 240:21–241:13. Likewise, in explaining the basis for his opinion that the disclosure provides support for the claim requirement of writing a portion of a page to volatile memory, Dr. Bagherzadeh explained that he looked at the claims themselves as "critical elements" for his support:

> Q With respect to the Figure 9 embodiment that you've identified, *in order to support your conclusion that a person of ordinary skill in the art would understand that that embodiment discloses or supports the idea of writing less than a page or a portion of a page, you would combine Figure 9 with Column 2, Lines 1 through 3, correct?*
>
> A *And the claims.*
>
> Q And the claims. Is there anything else in the specification that you believe supports that conclusion?

4

A So the claims -- I want to establish that the claims you talked about, the figure, and the address decoding. These are the three areas that -- that I can say -- if there's another place, maybe it will come back to me; but right now I've identified the claims, the decoding for bit or a byte, and the -- and the figure.

Q Okay. If you were to -- if you were to remove the disclosure from Column 1 and Column 2, so, for example, if a person of ordinary skill in the art only had Figure 9 and the claim, do you believe there would be adequate written description support for the claim?

A You're saying if you revise the specification --

Q Right.

A --to your liking, would – would the POSITA be able to -- to figure this out? I would think you would not be able to because ***those are critical elements of understanding, the claims, the Column 1 and 2 and the figure.*** So if you revise this, I wouldn't – I wouldn't be able to, you know, write my report the way it is. It would be a different patent.

Bagherzadeh Dep. at 202:23–204:7. Consistent with this, Dr. Bagherzadeh stated that he "of course" considered the claims, along with the figures and the text, when searching for written description support:

Q When you look at the question of the written description, of whether there was adequate written description support for the claims invention, did you consider the figures in the patents?

A Yes, of course I did. It's in my report.

Q Did you consider the written text of the specifications?

A Yes, I did.

Q ***Did you consider the claims themselves***?

A ***Yes, of course***. It's in my report.

Q Okay. And ***when you were looking for written description support*** for the claims, you looked at the figures in the patent, correct?

A Yes.

5

> Q And you looked at the text of the specifications, correct?
>
> A You just asked me. Yes. The answer is yes.
>
> Q And *you looked at the claims themselves?*
>
> *A I looked at the whole patent.*

Bagherzadeh Dep. at 139:2–22; *see also id.* at 200:4–10, 206:1–209:13.

These are not isolated examples—they are integral to Dr. Bagherzadeh's analysis. Dr. Bagherzadeh conceded that he used the figures in the patent, the text of the specification, *and the claims* as, in his words, a "three-legged stool," and that he has not offered an opinion on written description without all three legs of the stool:

> Q Sure. But I'm trying to understand what --*what all the evidence is that you're relying on*. So it sounds like what you're suggesting is that if you read Column 1 in the context of Figure 9, that's the basis for the opinion?
>
> A *And the claims*.
>
> Q Okay. If you were to exclude --
>
> A The three --
>
> Q Right. If you were to exclude the claim, *then I take it your opinion is if you remove one of the legs of the stool and you had only Figure 9 and Column 1*, that -- if you have an opinion as to whether a person of ordinary skill in the art would understand that you could use the write cache buffer as the claimed second buffer to write a portion of a page?
>
> A So if you want to apply the attrition approach to this, keep removing the legs, I need to think about it *because I considered all three legs for my* -- for my report. Okay?

Bagherzadeh Dep. at 218:20–219:15; *see also id.* 206:1–209:13, 216:12–20, 231:23–232:3. In other words, by Dr. Bagherzadeh's own admission, his written description opinion cannot stand without inclusion of the asserted claims. And because that third leg—critical to his analysis— cannot be considered as a matter of law, Dr. Bagherzadeh's opinion cannot be relied upon to rebut

Intel's showing of a lack of written description.

> **2.     Flash-Control And Its Expert Have Failed To Identify Written Description Support For The Claims As An Integrated Whole**

Dr. Bagherzadeh's written description opinions should be rejected on the independent basis that he improperly finds written description support by *post hoc* combining an amalgam of different disclosures across the patent to support individual claim limitations.

Section 112 requires that the disclosure demonstrate possession of the ***claimed invention***, not a disclosure that would render the claimed invention obvious:

> [W]e have repeatedly stated that actual "possession" or reduction to practice outside of the specification is not enough. Rather, as stated above, ***it is the specification itself that must demonstrate possession***. And while the description requirement does not demand any particular form of disclosure or that the specification recite the claimed invention *in haec verba*, ***a description that merely renders the invention obvious does not satisfy the requirement***.

*Ariad Pharm. Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1352 (Fed. Cir. 2010) (citations omitted). In assessing written description, a patentee cannot "[w]ork[] backward from a knowledge of the claims" but must instead take "each claim . . . as an integrated whole rather than as a collection of independent limitations." *Novozymes A/S v. DuPont Nutrition Biosciences APS*, 723 F.3d 1336, 1349 (Fed. Cir. 2013). Written description support requires more than an "amalgam of disclosures plucked selectively from the [specification]." *Id.*; *see also Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997); *Purdue Pharma L.P. v. Recro Tech.*, LLC, 694 F. App'x 794, 797 (Fed. Cir. 2017) ("To the extent that Purdue contends that a person of skill in the art would isolate and combine aspects from various embodiments in the specifications . . . to obtain the claimed invention, Purdue relies upon the wrong test.").

Dr. Bagherzadeh was not instructed on this standard when he formed his opinion in this case. Rather, he was given a nine-line statement of the legal standard on written description that

omitted any explanation or direction that he should look for support for the claims as an integrated whole. Dkt. 60 at Ex. 3 ¶ 28. He confirmed in deposition that he had no understanding of the law beyond this statement. Bagherzadeh Dep. at 133:24-134:7 ("Whatever is here is my understanding.").

Instead, contrary to the law, Dr. Bagherzadeh mixed and matched support for individual components of the claims from different embodiments and examples—pulling a box here and a box there from the figures and a sentence here and sentence there from the specification to argue that a person of ordinary skill in the art could, using their own knowledge, put together the invention. Bagherzadeh Dep. at 146:5–12. But that is an analysis of obviousness, not of written description. *Ariad*, 598 F.3d at 1352. On the relevant question of whether a person of ordinary skill in the art would have understood these disparate figures and text to teach the claims as an integrated whole, Dr. Bagherzadeh could not testify that he looked for support for the integrated claims as opposed to picking and choosing from different embodiments:

> Q. With respect to the question of whether or not you are permitted to combine support from multiple embodiments, if that answer to that question is not reflected in Paragraph 28, then you don't know the answer, correct?
>
> THE WITNESS: I did not -- I did not say that. All I said is my understanding --
>
> BY MS. MEHTA:
>
> Q I'm asking --
>
> A I have -- I have applied whatever technique I want to apply. I don't know anything about the legal matters. You can ask all these legal matters about how many embodiments should be part of the claim. This is not part of what I specialize in. My understanding is Paragraph 28. I applied the whole document to understand and write my report. That's what I've done. ***Now, whether the embodiments should be done sequentially, individually, combination, as a whole, that's a legal matter outside the domain of the scope of my knowledge***, Counsel.

Bagherzadeh Dep. at 173:24–174:21; *see also* 150:10–25, 156:1–157:18, 161:22–162:12, 174:23–175:3. In fact, Dr. Bagherzadeh could not testify whether he had mixed and matched from different embodiments because he "wasn't paying attention to the approach" and for all he could remember *"[i]t could have been in multiple – you know, any combination of claims and embodiments."* Bagherzadeh Dep. at 183:20–184:4; *see also id.* at 177:22-178:7.

### B.   Without Dr. Bagherzadeh's Opinion, Flash-Control Has Not Rebutted Intel's Showing On Written Description

Ultimately, the defects in Dr. Bagherzadeh's analysis are so fundamental and pervasive that his opinion must be rejected as a whole. *Yeti Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 429210, at *2 (W.D. Tex. Jan. 28, 2017) ("[c]ourts will exclude expert testimony when it relies on an incorrect legal standard."); *see also Inline Connection Corp. v. AOL Time Warner Inc.*, No. CIVA 02-272MPT, 2007 WL 275928, at *5 (D. Del. Jan. 29, 2007) (excluding expert opinion on enablement where the expert "did not conduct a proper enablement analysis"). And without its expert's opinion, Flash-Control has presented no evidence on the only issue before the Court on written description: whether a *person of ordinary skill in the art* would understand that the inventor was in possession of the invention. On that question, Intel's evidence stands unrebutted and summary judgment is warranted. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 383 (5th Cir. 1996) (affirming grant of Defendant's motion for summary judgment after proper striking of expert testimony left no evidence in support of plaintiff's position); *Emerson v. Johnson & Johnson*, No. CV H-17-2708, 2019 WL 764660, at *3 (S.D. Tex. Jan. 22, 2019), *appeal dismissed*, No. 19-20276, 2019 WL 5390017 (5th Cir. Aug. 27, 2019) (granting summary judgment when exclusion of necessary expert testimony, resulting from untimely designation, left no genuine issue of material fact).

**C.      Even With Dr. Bagherzadeh's Opinion, There Is No Written Description Support For The Asserted Claims**

Without Dr. Bagherzadeh's defective opinions, Flash-Control has not rebutted Intel's showing (supported by Dr. Sechen) that a person of ordinary skill in the art would not find written description support for the claims in the disclosure. The Court should enter summary judgment on that basis alone. But even if the Court does not reject Dr. Bagherzadeh's declaration, Dr. Bagherzadeh's opinion—Flash-Control's only proof of how a person of ordinary skill in the art would understand the patent disclosure—is also wrong on the merits. Flash-Control fails to rebut Intel's showing that the asserted claims do not have sufficient written description support.

As a refresher, the purported invention of the asserted patents is a system to update data on non-volatile memory using a first and second buffer, along with volatile memory. At a high level the claims require that (1) a page of data is read out of the non-volatile memory to the first buffer, (2) a portion of that page is then read from the first buffer to the volatile memory, (3) the data on the volatile memory is updated based on a write request that had been at least partially stored on the second buffer, (4) the newly modified portion of a page on the volatile memory is then written back to the first buffer where it is combined with the original unmodified portions of a page, and (5) that newly modified page is written back to the nonvolatile memory.

Because the analysis of the one claim limitation subsumes all three written description defects, this reply focuses on the third limitation presented in Intel's motion:[4] "to write said one or more changes from said second buffer to said volatile memory, thereby updating said one or

---

[4]      As to the other two written description defects established by Intel, Flash-Control's cited evidence is the same or a subset of the evidence addressed in this section. For the same reasons that the evidence cited does not show possession of the claimed second buffer and volatile memory in this limitation, it does not support possession of the claimed first or second buffers or volatile memory elsewhere in the claim and certainly not of the claimed invention as a whole.

more updated portions from said volatile memory to said first buffer, thereby updating said page store therein to include said one or more changes associated with said one or more write requests." This limitation has two key requirements: (1) a second buffer that is configured to store information associated with a write request that modifies a portion of a page, and (2) a volatile memory that holds at least one partial page originating from the non-volatile memory, that can update that partial page based on information from the second buffer, and that can then write that updated information to the first buffer.

Flash-Control has not identified any disclosure of these two elements alone or as an integrated whole with the rest of the claim. Instead, Flash-Control identifies figures that depict two buffers and text that it contends discloses reading and writing a portion of a page. But relying on embodiments or examples of two buffers in some parts of the specification and embodiments or examples of writing a portion of a page to memory in others is not what the law requires. As explained below, neither Dr. Bagherzadeh nor Flash-Control have identified sufficient disclosure to teach a person of ordinary skill how to use these elements together as claimed, or, critically, that they could be used with a volatile memory as required.

Starting with the "read/write buffer" in Figure 9, Flash-Control argues that the buffers in Figure 9 "show possession of the concept of using the second buffer and modifying a portion of a page," and that a person of ordinary skill in the art would have understood that these buffers "may be adapted to serve as first and second buffers." Dkt. 60 at 9-10. However, Figure 9 does not disclose modifying data increments smaller than a page, i.e., portions of a page at a level of granularity below a page. Dr. Bagherzadeh was forced to admit this on cross-examination. Bagherzadeh Dep. at 201:4–202:8. Moreover, even if Figure 9 did somehow teach or disclose modifying data at finer increments, it still could not demonstrate that the inventor possessed a

*volatile memory* that can do all three things as required by the claims: (1) hold at least one partial page originating from the non-volatile memory, (2) update that partial page based on information from the second buffer, and (3) write that updated information to the first buffer. As Dr. Bagherzadeh conceded in deposition, Figure 9 does not show a first buffer, a second buffer, and a volatile memory, as required by the claims. Bagherzadeh Dep. at 194:20-24, 195:21–196:2. Ultimately, Dr. Bagherzadeh admitted that the only way he would conclude that the "read / write buffer" could be the second buffer was by improperly bootstrapping the disclosure with the claims themselves.[5] Bagherzadeh Dep. at 202:23-205:13.

To support the claims' requirement that the second buffer be configured to store information associated with a write request that modifies a portion of a page, Flash-Control (and Dr. Bagherzadeh) cites the data register ("Data Reg.") in Figure 3 as "capable of controlling read/write combinations, thus, allowing movement and/or modification of pages or portions thereof." Dkt. 60 at 10. But Dr. Bagherzadeh admits that Figure 3 does not disclose a second buffer. Bagherzadeh Dep. at 232:7-233:3. When asked if the data register in Figure 3 disclosed the second buffer, Dr. Bagherzadeh testified that you would have to combine the data register in Figure 3 with Figure 9 to arrive at that disclosure. *Id.* at 236:10-237:7. What he *could not testify* to is that a person of ordinary skill in the art would understand Figure 3 and Figure 9 to disclose as an integrated whole the complete invention. To the contrary, doing so would be "an engineering feat:"

> Q. So if you – so *if you were to combine Figure 3 and Figure 9, then that would lend support to a person of ordinary skill in the art to know that the data registry block could be the second buffer*

---

[5]      Flash-Control's suggests that the "page buffer" and "write cache buffer" "may act as the first and second buffers, respectively." Dkt. 60 at 9-10; Dkt. 60 at Ex. 3 ¶ 36. But again, Flash-Control points to no disclosure that these two buffers reflect possession of the *claimed* buffers as required, let alone that these components interact with the volatile memory in the specific manner directed by the claims.

> *in your view*?
>
> A. You will have the basic block to think that way. I cannot say that just combining these two, you would get it. That's why I'm trying to tell you. It's ***an engineering feat that requires a lot more work than*** – than – than just combining these two figures; but that would be the understanding, that the register file would be the second buffer, yes.

Bagherzadeh Dep. at 236:19-237:7; *see also id.* at 240:21-241:13. Tellingly, Dr. Bagherzadeh admits that the data register itself is not described anywhere in the patent. *Id.* at 230:2–21.

Flash-Control goes on to argue that the ability to modify a portion of the page is "further supported by the ability to read and write random access within a page and serial access for a page." Dkt. 60 at 10. Although Flash-Control extensively cites its expert's declaration and testimony from Dr. Sechen for the unremarkable proposition that "[r]andom access within a page and serial access from a page are examples of a portion of a page," its conclusion that "the shared specification says that these portions of a page may be read or written, and writing is making a change" has ***no citation whatsoever***. Dkt. 60 at 11. This bare attorney argument simply doesn't address the critical inquiry confronting the Court: how or why a person of skill would understand that disclosure to reflect possession of the claimed invention as an integrated whole.

The other disclosures that Flash-Control cites fare no better. Flash-Control relies on the commands "read byte out of page" and "write byte out of page" to "refer to reading and writing portions of a page." Dkt. 60 at 11-12. Flash-Control neither shows how these commands are linked to the first buffer, the second buffer, or the volatile memory, nor how it shows possession by the named inventor of the claim limitations that describe the interaction of all three components. Flash-Control's expert concludes only that the applicant was "in possession of a system in which portions smaller than an entire page could be selectively located and read or written." Dkt. 60 at Ex. 3 ¶ 46. He does not conclude that they demonstrate that the applicant was in possession of the claimed

system. *Id*. This is not surprising because the specification refers to these commands as "new commands" and otherwise provides no explanation for what they do. '880 Patent at 4:32-35.

Continuing to hunt for support, Flash-Control points to "a switch that may access volatile and nonvolatile memory to move a portion of a page." Dkt. 60 at 10 (citing 3:31-34). But Dr. Bagherzadeh admits that the process of SRAM switching is not claimed in the asserted claims. Bagherzadeh Dep. at 285:15-17. He never explains why the mere fact that a switch (which allows data to be written between a volatile memory and a non-volatile memory) would demonstrate possession of a second buffer, a volatile memory, and the ***claimed data flow*** between them.

Flash-Control's identification of "coupling buffers" likewise falls short. Flash-Control merely contends that coupling buffers may be used to move a page or a portion of a page. Dkt. 60 at 11. But Flash-Control does not identify the coupling buffers as either the first or second buffer. Nor does Flash-Control identify any disclosure, or even make any argument, that the coupling buffers are connected to a volatile memory.

Ultimately, the core of Flash-Control's contention that the specification shows possession of writing to memory at a level below a page relies on a two-sentence passage in the "Background" of the patent. *Id*. ("Writing at a 'fine grain level' provides support for changes to a portion of a page."). This disclosure simply cannot bear the weight that Flash-Control would have the Court put on it. As a threshold matter, Dr. Bagherzadeh[6] admitted that these two sentences relate to the

---

[6]     Unable to confront Intel's expert testimony head-on, Flash-Control opts instead to mischaracterize it. Flash-Control argues that Dr. Sechen's testimony is "flawed" because he did not assume that the "invention described in this utility patent" relates to the asserted patents, specifically criticizing him for his reading of the disclosure at Column 2, lines 1-3. But this was Dr. Sechen's point. Dr. Sechen testified:

> Q: And you would agree that the portion of the specification that I
> read began with "The invention described in this utility application"
> and then also referred to a preferred embodiment on line 67 of

SRAM preferred embodiment that is not claimed in the asserted patents, but in the unasserted patents, **and** that they disclose nothing about the second buffer of the asserted claims. Bagherzadeh Dep. at 229:7–22, 242:20–243:19, 249:1–12. In reality, they do not refer to the first buffer, the second buffer, or the volatile memory at all. And fatal to Flash-Control's argument, Dr. Bagherzadeh admitted that a person of ordinary skill in the art would be unable to implement writing to the volatile memory at the level below a page based on these two sentences. *Id*. at 249:13-24. At best, they suggest that—in a preferred embodiment related to claims not at issue— one might be able to write to memory at the bit or byte level. Even if a person of ordinary skill was motivated to combine that idea with the buffers disclosed elsewhere in the specification such that the claims might be obvious, that is insufficient to establish written description as a matter of law.

In the end, all Flash-Control has done is direct the Court to an "amalgam of disclosures plucked selectively from the [specification]." *Novozymes A/S*, 723 F.3d at 1349. Neither Flash-Control, nor its expert, provide any evidence, whether intrinsic or based on a person of ordinary skill in the art, that the various black boxes are an integrated whole. Unable to identify any integrated disclosure of the asserted claims, Flash-Control has failed to rebut Intel's showing on summary judgment that a person of ordinary skill could not conclude that the patentee possessed the claimed invention as of the filing date.

---

column 1, which continued over to column 2, where it discusses read, write, at a fine grain level of a bit or byte, right?

A: No, this embodiment is from the '916 and '452 patents. It's got nothing to do with Claim 1 here.

Sechen Dep. at 226:11-21.
In other words, Dr. Sechen consistently testified that the specific embodiment that Flash-Control relies upon relates to claims in the earlier filed unasserted patents and not later filed claims asserted here. And significantly, Dr. Bagherzadeh agreed. Bagherzadeh Dep. at 284:17–285:17 (admitting that SRAM mode is not claimed).

### III.   CLAIM 1 OF THE '880 PATENT IS INVALID AS INDEFINITE

Claim 1 of the '880 patent is invalid under Section 112 as it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014). This lack of certainty is a direct result of the claim's omission of twenty-nine words that were added by the patentee, accepted by the examiner, and inexplicably missing from the published patent:



Despite this clear error in the published claim, Flash-Control and its Expert make **zero** reference to the missing language in its response. Rather than acknowledge the missing words or try to fix the patent through the appropriate USPTO procedures, Flash-Control doubles down on the broken claim and attempts to wrestle meaning out of a non-sensical claim. There are multiple problems with Flash-Control's approach.

At the outset, Flash-Control's argument is an about-face to Flash-Control's own explanation of the asserted claims just over three months ago. In Flash-Control's Opening Claim Construction Brief, filed on February 5, 2020, Flash-Control argued that the same phrase was not an "actual limitation." Dkt. 49 at 10. Flash-Control went on to say:

> The Examiner's reason for allowance did not include the disputed claim phrase. It appears to instead have been added by mistake by the Examiner and the applicant expressly noted that the claim contained transcription errors. As such, because the language was not material to patentability, and merely states the intended result of

> what the memory system is adapted to do, ***it is not an actual limitation and cannot form the basis for indefiniteness.***

*Id.* Now, Flash-Control argues—with no intrinsic support—that the phrase means "the changes that were written to the volatile memory in the prior step be written to the first buffer." Dkt 60 at 13.

To support its new interpretation of the claims, Flash-Control relies solely on its expert's opinion that the non-sensical phrase would have this meaning to a person of ordinary skill in the art. But Dr. Bagherzadeh's opinion fares no better here than it did on written description. In fact, Dr. Bagherzadeh admits that he did not even consider the claim in light of the missing claim language. Bagherzadeh Dep. at 326:14–20 ("Q. Okay. Did you know that those – that portions associated with language was missing from the patent when you offered your opinion?" "A. I did not look outside this patent claim. My focus was on the patent claims as they are presented in the patent."); *id.* at 327:15-17 ("As I just stated and I think you confirmed, I used the claims as they appear in the patent"); *see also id.* at 326:14-327:1 ("As it's reported in my report. I mean, 57 clearly talks about the claims").

Even apart from the defects in Dr. Bagherzadeh's analysis, Flash-Control and its expert have not adequately addressed Intel's showing that the claim is indefinite because the antecedent basis for the "said one or more updated portions" requirement was to have been provided in the twenty-nine words that were omitted from the claim and thus is missing from the claim as issued:

> said system further adapted to write said one or more changes from said second buffer to said volatile memory, thereby updating said one or more portions associated with <u>said one or more write requests to include said one or more changes;</u>
>
> <u>said system being further adapted to write thereby updating</u> said one or more updated portions from said volatile memory to said first buffer, thereby updating said page stored therein to include said one or more changes associated with said one or more write request; and

(missing language underlined); *see* Dkt. 48 at 20. When the missing language is included in the claim, it becomes clear that the antecedent basis is the phrase, "updating said one or more portions associated with said one or more write requests." With the language missing from the claim, the claim is simply invalid and cannot be saved by the Court as a matter of law. *See Cellular Commc'ns Equip. LLC v. AT&T, Inc.*, No. 2:15-CV-576-RWS-RSP, 2016 WL 7364266, at * 8 (E.D. Tex. Dec. 19, 2016) (finding the term "the apparatus" indefinite because the claims did not specify whether "the apparatus" was "an apparatus that is performing the recited method"); *see Honeywell Int'l Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969, 985 (D. Minn. 2014) (finding the claim invalid where "two options entail differing limitations for the claim, the missing language in claim 1 results in a lack of reasonable certainty as to its scope."); *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1334-35 (Fed. Cir. 2014) (affirming motion for summary judgment finding claim invalid for indefiniteness where a material limitation was omitted and the omission was not evident on the face of the patent because "[t]o hold otherwise would potentially permit patentees to assert claims that they never asked for nor rightly attained.").[7]

The bottom line is that Intel has established that "said one or more updated portions" could be understood by a person of ordinary skill in the art in multiple possible ways. In response, Flash-Control argues simply that a person of ordinary skill in the art would have understood the limitation to refer to one or more of the portions of the page associated with the write request(s) that had been previously written to the volatile memory. Dkt. 60 at 16. However, other than citing to its expert, who in turn makes a passing reference to a person of ordinary skill in the art, Flash-Control provides no analysis as to why its interpretation is the interpretation a person of skill would land on, and no analysis that a person of skill would know to reject any of these other possible meanings.

---

[7]    Flash-Control dismisses these cases as not relevant but makes no effort to distinguish them.

Dkt. 60 at 16. In other words, Intel's showing that Claim 1 of the '880 patent as issued (i.e., without the twenty-nine missing words) could be understood by a person of ordinary skill in the art to have multiple different meanings and thus multiple different potential claim scopes is *unrebutted.*

## IV.    CONCLUSION

For the foregoing reasons, and those in Intel's opening brief, Intel respectfully requests that the Court find U.S. Patent No. 8,531,800 and U.S. Patent No. 8,817,537 invalid for lacking written description. Intel additionally requests that the Court find Claim 1 of Patent No. 8,531,880 invalid as indefinite.

Dated: May 26, 2020                                       Respectfully submitted,

                                             By:    */s/ J. Stephen Ravel*
                                                   J. Stephen Ravel
                                                   Texas State Bar No. 16584975
                                                   KELLY HART & HALLMAN LLP
                                                   303 Colorado Street, Suite 2000
                                                   Austin, TX 78701
                                                   Telephone: (512) 495-6429
                                                   Facsimile: (512) 495-6401
                                                   steve.ravel@kellyhart.com

                                                    *Attorney for Defendant Intel Corporation*

                                                   Sonal N. Mehta (*pro hac vice*)
                                                   California State Bar No. 222086
                                                   Jennifer John (*pro hac vice*)
                                                   Massachusetts State Bar No. 694749
                                                   WILMER CUTLER PICKERING HALE
                                                    & DORR LLP
                                                   950 Page Mill Road
                                                   Palo Alto, CA 94304
                                                   Telephone: (650) 600-5051
                                                   Facsimile: (650) 858-6001
                                                   sonal.mehta@wilmerhale.com
                                                   jennifer.john@wilmerhale.com

                                                   Taylor Gooch (*pro hac vice*)
                                                   California State Bar No. 294282

Joshua D. Furman (*pro hac vice*)
California State Bar No. 312641
WILMER CUTLER PICKERING HALE
 & DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1026
Facsimile: (628) 235-1001
Taylor.gooch@wilmerhale.com
Josh.furman@wilmerhale.com

*Attorneys for Defendant Intel Corporation*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on May 26, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ J. Stephen Ravel*
J. Stephen Ravel
